J-A08034-14

2014 PA Super 191

| ALTOONA REGIONAL HEALTH SYSTEM | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| COREY R. SCHUTT, D.O. | |
| Appellees | |
| v. | |
| UNIVERSITY ORTHOPEDICS CENTER, LTD. | |
| Appellant | No. 1072 WDA 2013 |

Appeal from the Order Entered on May 30, 2013
In the Court of Common Pleas of Blair County
Civil Division at No.: Civil Action No. 2012 GN 621

BEFORE:  ALLEN, J., OLSON, J., and WECHT, J.

OPINION BY WECHT, J.:                    **FILED SEPTEMBER 04, 2014**

University Orthopedics Center, Ltd., ("UOC") appeals from the May 30, 2013 order of the Court of Common Pleas of Blair County.  UOC alleges that the trial court erred when it granted partial judgment on the pleadings and a permanent injunction to Altoona Regional Health System ("ARHS").  The injunction prevented UOC from enforcing a restrictive covenant provision in Corey R. Schutt, D.O.'s employment agreement.  That covenant barred Dr. Schutt from practicing orthopedics or related subspecialties for two years after the end of his employment with UOC and within twenty miles of UOC's facilities.  UOC also asserts that the trial court erred in sustaining the preliminary objections filed by Dr. Schutt.  For the reasons that follow, and

upon review of Rules 1034 and 2227 of our Rules of Civil Procedure, we must vacate in part, reverse in part, and remand for further proceedings.

On October 27, 2009, UOC and Dr. Schutt entered into a three-year employment agreement. *See* Complaint for Injunction and Declaratory Relief, 2/22/2012, Exh. A.2 ("Employment Agreement"). That same day, ARHS, UOC, and Dr. Schutt entered into an "Orthopedic Trauma Support and Practice Recruitment Agreement" in which ARHS agreed to underwrite a portion of Dr. Schutt's salary at UOC in exchange for Dr. Schutt covering calls in ARHS' emergency room. Complaint for Injunction and Declaratory Relief, 2/22/2012, Exh. A.1 ("Recruitment Agreement").

Approximately two years later, Dr. Schutt terminated his employment with UOC and began work at Southern Alleghenies Elite Orthopedics ("Elite Orthopedics"), which is a wholly-owned subsidiary of ARHS. In a January 11, 2012 letter to Dr. Schutt, UOC asserted that Dr. Schutt had breached the restrictive covenant of the Employment Agreement by beginning work at Elite Orthopedics, and UOC claimed it was entitled to $250,000 in liquidated damages as a result of the alleged breach. ARHS responded with a January 25, 2012 letter that demanded UOC cease any attempts to enforce the restrictive covenant. Specifically, ARHS cited an exception to the restrictive covenant in Section 5.8 of the Recruitment Agreement.

On February 22, 2012, ARHS filed a complaint against UOC in the Court of Common Pleas of Blair County. The complaint sought an injunction to prevent UOC from enforcing the restrictive covenant against Dr. Schutt,

and also sought declaratory relief to elucidate the parties' rights under the contracts. On March 14, 2012, UOC filed preliminary objections to ARHS' complaint. In relevant part, UOC sought dismissal of the complaint because ARHS had failed to join Dr. Schutt, an assertedly indispensable party. *See* UOC's Preliminary Objection to Complaint, 3/14/2012, at 5-6. In an order and opinion dated August 1, 2012, the learned trial court concluded that Dr. Schutt was an indispensable party pursuant to Pa.R.C.P. 2227(a):

> Persons having only a joint interest in the subject matter of an action must be joined on the same side as plaintiffs or defendants. Pa.R.C.P. 2227[(a)]. Pennsylvania law holds that a party is indispensable "when his or her rights are so connected with the claims of the litigants that no decree can be made without impairing those rights." *Sprague v. Casey*, 550 A.2d 184, 189 (Pa. 1988). In this case, the [c]omplaint relates to the enforcement of agreements to which Dr. Schutt is [a] party and the disposition of this [c]omplaint will either render him able to practice medicine freely or may lead to further litigation involving his ability to practice and obligations to pay damages and perhaps attorney's fees. Additionally, the court would not have jurisdiction to render a judgment without the presence of Dr. Schutt because of the principle that a decree should finally determine the rights that all persons have in a subject. *Powell v. Shepard*, 113 A.2d 261, 265 (Pa. 1955). Therefore, it is obvious that [Dr. Schutt's] rights are so connected that no decree can be made without impairing those rights.

Order, 8/1/2012, at 3-4 (citations modified, italics added). Consequently, the trial court dismissed ARHS' complaint, but granted ARHS thirty days within which to amend its pleading.

On August 7, 2012, ARHS filed an amended complaint. This pleading was virtually identical to the original complaint and requested the same

injunctive and declaratory relief. The only substantive difference between the two filings was that, in deference to the trial court's order, the amended complaint added Dr. Schutt as a named party. **See** ARHS' First Amended Complaint, 8/7/2012, ¶¶27-35. ARHS chose to designate Dr. Schutt as an "Involuntary Plaintiff."

On September 21, 2012, UOC responded to ARHS' amended complaint with an answer, new matter, and counterclaims. In this filing, UOC asserted various counterclaims against ARHS and Dr. Schutt, including breach of contract, tortious interference, and breach of fiduciary duty. The counterclaims also sought to enforce the restrictive covenant against Dr. Schutt, and requested that ARHS provide UOC allegedly unpaid income contributions. **See** Answer, New Matter and Counterclaims to First Amended Complaint for Injunction and Declaratory Relief, 9/21/2012, at 22-32.

On October 10, 2012, Dr. Schutt filed preliminary objections to UOC's counterclaims. In pertinent part, Dr. Schutt asserted a demurrer on all counterclaims, arguing that Pa.R.C.P. 2227(b) barred UOC from filing affirmative counterclaims against Dr. Schutt because of his involuntary status. Dr. Schutt's Preliminary Objections to Answer, New Matter, and Counterclaims, 10/10/2012, ¶¶10-16. On October 18, 2012, ARHS filed a response to UOC's answer.

On December 13, 2012, UOC filed a reply to Dr. Schutt's preliminary objections, arguing that the trial court should reject Dr. Schutt's demurrer. On that same day, UOC replied as well to ARHS' October 18 response.

On January 2, 2013, before the trial court had ruled upon Dr. Schutt's preliminary objections, ARHS filed a motion for partial judgment on the pleadings regarding ARHS' claims for injunctive and declaratory relief and regarding UOC's counterclaims seeking to enforce the restrictive covenant of the Employment Agreement. *See* Motion for Partial Judgment on the Pleadings, 1/2/13, ¶2. ARHS argued that the language in Section 5.8 of the Recruitment Agreement unequivocally forbids UOC from attempting to enforce the restrictive covenant in the event that Dr. Schutt commences employment with an ARHS subsidiary. *Id.* at ¶18.

On January 22, 2013, UOC filed its answer in opposition to ARHS' motion for partial judgment on the pleadings. UOC argued that ARHS' motion was premature because the pleadings were not closed and because material facts remained in dispute. On June 5, 2013, the trial court issued an order and opinion simultaneously addressing both ARHS' motion for partial judgment on the pleadings and Dr. Schutt's preliminary objections. First, the trial court granted ARHS' request for injunctive and declaratory relief:

> Section 5.8 of the Recruitment Agreement . . . is a carve-out provision which specifically prevents UOC from undertaking any efforts to restrict, prohibit or otherwise penalize Dr. Schutt from providing services as an employee of or contractor of any entity which is owned or controlled by ARHS or any of its subsidiaries or its affiliates. Section 5.8 concludes with [*sic*] its last sentence by entitling ARHS to injunctive relief if UOC either directly violates[,] or is likely to violate[,] the subsection.
>
> Section 5.8 is applicable to the current relationship and the [c]ourt agrees with ARHS that the relief which [ARHS] requests

- 5 -

is abundantly clear as contained within the four corners of [S]ection 5.8. The [Recruitment] Agreement also contains a statement that includes a standard paragraph precluding consideration of any other interpretation of the document not reduced to writing.

Trial Court Opinion, 6/5/2013, ("T.C.O.") at 7-8.

Next, the trial court turned to Dr. Schutt's preliminary objections and concluded that UOC could not proceed against Dr. Schutt on UOC's affirmative counterclaims:

> Dr. Schutt relies on Pa.R.C.P. 2227(b) as it relates to involuntary plaintiffs. Dr. Schutt further relies on ***Karoly v. Cap***, 530 A.2d 436 (Pa. 1987), to buttress his argument that Pa.R.C.P. 2227 does not allow [d]efendant's recovery of damages against those joined as involuntary [p]laintiffs. Dr. Schutt reasons that if [i]nvoluntary [plaintiffs] are not required to file pleadings, [then] affirmative counterclaims seeking injunctive relief and money damages should not be permitted.
>
> The [c]ourt agrees with Dr. Schutt and therefore grants this demur[r]er and dismisses all [c]ounterclaims brought against Dr. Schutt in his role of [i]nvoluntary [p]laintiff.
>
> By this specific portion of the [o]rder, the [c]ourt is granting the demur[r]er as it involves Dr. Schutt being an [i]nvoluntary [p]laintiff. The reliance upon which [*sic*] this [c]ourt is granting the demur[r]er is because of Dr. Schutt's position as an [i]nvoluntary [p]laintiff.

***Id.*** at 10-11 (citations modified or omitted). The trial court further stated that this latter portion of its order "is really no more than an admission by the [c]ourt that its earlier [o]rder allowing Dr. Schutt to be entered as an Involuntary Plaintiff was in error." ***Id.*** at 11.

On June 26, 2013, UOC filed a notice of appeal. On July 2, 2013, the trial court ordered UOC to file a concise statement of errors complained of on

appeal pursuant to Pa.R.A.P. 1925(b). On July 19, 2013, UOC timely filed its Rule 1925(b) statement. On September 26, 2013, in lieu of an opinion, the trial court issued a statement declaring that it was "relying [up]on the record in the above[-]captioned matters."

UOC presents the following issues for our review:

A. Whether the trial court erred by ruling that an indispensable party joined as a[n] involuntary plaintiff was not subject to related counterclaims?

B. Whether the trial court erred by granting the plaintiff's motion for partial judgment on the pleadings, and by dismissing the defendant's counterclaims, when the relevant pleadings were not complete, and where the pleadings of record disclosed the existence of material disputed facts?

C. Whether the trial court erred by granting a permanent injunction that prevented the defendant from asserting tort and contract claims, where the right to recovery was not clear on the face of the pleadings alone?

Brief for UOC at 3.

Before addressing the merits of the issues presented by UOC, we must clarify the appealability of the underlying order. Inasmuch as the issue of appealability affects our jurisdiction, we may raise it *sua sponte*. **Morgan Trailer Mfg. Co. v. Hydraroll, Ltd.**, 804 A.2d 26, 29–30 (Pa. Super. 2002). As a general rule, this Court has jurisdiction only over appeals taken from final orders. **Commonwealth v. Scarborough**, 64 A.3d 602, 608 (Pa. 2013). A "final order" is an order that disposes of all claims. **See** Pa.R.A.P. 341(b). Here, the trial court allowed UOC's third counterclaim to survive

judgment on the pleadings. T.C.O. at 12-13. Thus, at first blush, it would appear that we lack jurisdiction.

However, Pa.R.A.P. 311 carves out an exception to this general rule. Specifically, an appeal may be taken as of right from an order that grants or denies an injunction. Pa.R.A.P. 311(a)(4). The instant order granted ARHS an injunction against UOC. Furthermore, the portion of the order sustaining Dr. Schutt's preliminary objections denied UOC's request for injunctive relief listed in its fourth counterclaim. Because the underlying order granted and denied injunctions, our jurisdiction is proper. *See Vonada v. Long*, 852 A.2d 331, 335-36 (Pa. Super. 2004) ("[T]he plain meaning of the words contained in Rule 311(a)(4) is that an order refusing [or granting] a request for an injunction is an interlocutory order appealable as of right unless the order involves an injunction issued pursuant to two explicit provisions of the Divorce Code or the order is in the form of a decree *nisi*.").

Due to the nature of our disposition, we will begin our discussion by addressing UOC's second issue. In that claim, UOC argues that the trial court erred by granting ARHS' motion for partial judgment on the pleadings. Specifically, UOC alleges that judgment on the pleadings was premature because those pleadings were still open. We agree.

Our scope and standard of review in this context are well-defined:

> Our scope of review on an appeal from the grant of judgment on the pleadings is plenary. *Meehan v. Archdiocese of Phila.*, 870 A.2d 912, 918 (Pa. Super. 2005). Entry of judgment on the pleadings is permitted under Pennsylvania Rule of Civil Procedure 1034, which provides that "after the pleadings are

closed, but within such time as not to unreasonably delay trial, any party may move for judgment on the pleadings." Pa.R.C.P. 1034(a). A motion for judgment on the pleadings is similar to a demurrer. *Citicorp N. Am., Inc. v. Thornton*, 707 A.2d 536, 538 (Pa. Super. 1998). It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law. *Id*. In determining if there is a dispute as to facts, the court must confine its consideration to the pleadings and relevant documents. *Id*. On appeal, we accept as true all well-pleaded allegations in the complaint. *Meehan,* supra.

On appeal, our task is to determine whether the trial court's ruling was based on a clear error of law or whether there were facts disclosed by the pleadings which should properly be tried before a jury or by a judge sitting without a jury. *Citicorp, supra*.

> Neither party can be deemed to have admitted either conclusions of law or unjustified inferences. Moreover, in conducting its inquiry, the court should confine itself to the pleadings themselves and any documents or exhibits properly attached to them. It may not consider inadmissible evidence in determining a motion for judgment on the pleadings. Only when the moving party's case is clear and free from doubt such that a trial would prove fruitless will an appellate court affirm a motion for judgment on the pleadings.

*Kelly v. N'wide Ins. Co.*, 606 A.2d 470, 471-72 (Pa. Super. 1992) (quotations and citations omitted).

*Consolidation Coal Co. v. White*, 875 A.2d 318, 325-26 (Pa. Super. 2005) (citations modified).

UOC alleges that the motion for judgment on the pleadings was premature because Pa.R.C.P. 1034 requires that the relevant pleadings be closed before any party may file such a motion. Specifically, UOC maintains that, at the time when ARHS interposed its motion, the relevant pleadings were not closed because Dr. Schutt had yet to file a substantive response to

- 9 -

UOC's September 21, 2012 answer, new matter, and counterclaims. Brief for UOC at 23-24.

Motions for judgment on the pleadings are governed by Pa.R.C.P. 1034, which reads as follows:

**Rule 1034.  Motion for Judgment on the Pleadings**

(a)    After the relevant pleadings are closed, but within such time as not to unreasonably delay the trial, any party may move for judgment on the pleadings.

(b)    The court shall enter such judgment or order as shall be proper on the pleadings.

The relevant scope of pleadings is governed by Pa.R.C.P. 1017:

**Rule 1017.  Pleadings Allowed**

(a)    Except as provided by Rule 1041.1,[1] the pleadings in an action are limited to

   (1)    a complaint and an answer thereto,

   (2)    a reply if the answer contains new matter, a counterclaim or a cross-claim,

   (3)    a counter-reply if the reply to a counterclaim or cross-claim contains new matter,

   (4)    a preliminary objection and a response thereto.

In relevant part, UOC asserts the following: "The trial court should not have considered the ARHS [motion for partial judgment on the pleadings] while Dr. Schutt's [preliminary objections] to the UOC counterclaims, and UOC's motion for leave to join Dr. Schutt as an additional defendant, were

_____

1     Pa.R.C.P. 1041.1 applies only to asbestos litigation.

pending." Brief for UOC at 24. Our task is clear. We must determine whether the relevant pleadings were, in fact, closed when ARHS filed its motion for judgment on the pleadings.

With specific reference to the interplay between the close of pleadings and preliminary objections, this Court has stated the following:

> Preliminary objections are a form of pleading allowable in equity. . . . Pa.R.C.P. 1028 is the logical extension of Rule 1017 and provides for the substantive requirements and handling of the objections. It points out that "the court shall determine promptly all preliminary objections." Before a case can be considered ripe for consideration of its merits, either by trial or other hearing, the pleadings must be closed. Implicit in this holding is the requirement that all preliminary objections—a part of the pleadings—be disposed of by the trial court.

**Reddick v. Puntureri**, 363 A.2d 1198, 1200 (Pa. Super. 1976).[2] Instantly, the record confirms that Dr. Schutt filed his preliminary objections on October 10, 2012. Between the time that Dr. Schutt filed his preliminary objections and the time that ARHS filed its motion for partial judgment on the pleadings on January 2, 2013, the trial court took no action regarding Dr. Schutt's preliminary objections.[3] Based on this record, it is evident that Dr. Schutt's preliminary objections were still pending when ARHS filed its

_____

[2] **See also Republic Servs. of Penna., LLC v. Krone**, 2389 C.D. 2009, 2011 WL 10858485, at *3 (Pa. Cmwlth. Jan. 6, 2011) ("[T]he trial court is first required to rule on the [preliminary objections] before considering the merits, and the failure to do so is a fatal procedural defect that must be addressed.") (unpublished memorandum).

[3] Indeed, the trial court did not dispose of Dr. Schutt's preliminary objections until it issued its June 5, 2013 opinion.

motion for partial judgment on the pleadings. Our precedent leads us to conclude that the pendency of unresolved preliminary objections means that the pleadings have not yet closed. **Reddick**, *supra*. Consequently, we cannot conclude that the "relevant pleadings" were "closed" such that ARHS' motion for partial judgment on the pleadings was procedurally proper.[4,5] **See** Pa.R.C.P. 1034(a) ("After the relevant pleadings are closed, . . . any party may move for judgment on the pleadings.").

Based upon the foregoing discussion, we hold that the trial court erred in addressing the merits of ARHS' motion for judgment on the pleadings

_____

[4] A note to Rule 1034 indicates that "[o]nly the pleadings between the parties to the motion for judgment on the pleadings must be closed prior to filing the motion." Pa.R.C.P. 1034, Note. ARHS suggests that its motion for partial judgment on the pleadings was only between ARHS and UOC, and that Dr. Schutt was not a "party" to that motion. **See** Brief for ARHS at 8. However, this argument is undone by the facts that (1) Dr. Schutt had been determined to be an "indispensable party" to the instant litigation; and (2) ARHS' motion for partial judgment on the pleadings necessarily entailed the adjudication of Dr. Schutt's rights and obligations under the Employment Agreement.

[5] This Court has held that, to avoid waiver, a respondent must make a timely objection to improper pleadings. **See Vintage Homes, Inc. v. Levin**, 554 A.2d 989, 992 (Pa. Super. 1989) (holding that an appellant "waived any objection to the non-filing of prerequisite pleadings" by "not objecting to the court's course of action and by presenting the merits of the issues"). Instantly, in its opposition papers, UOC timely objected to ARHS' motion for partial judgment. **See** UOC's Answer in Opposition to Motion for Partial Judgment on the Pleadings, 1/22/2013, at 6-7 ("Until Dr. Schutt's [p]reliminary [o]bjections have been resolved, and until the parties have an opportunity to conduct discovery related to the claims and disputed factual allegations framed by the pleadings, the [m]otion is not ripe for decision, and should be denied as premature.").

before disposing of the preliminary objections in this case. Because the pleadings were not yet closed, ARHS' motion was not permitted pursuant to Rule 1034(a). Thus, we must vacate the portion of the trial court's order that granted ARHS' requests for injunctive and declaratory relief.

Because the trial court erred in addressing ARHS' request for injunctive relief, we need not address UOC's third claim on this appeal, which challenges the trial court's grant of injunctive relief on separate grounds. Accordingly, we turn to UOC's remaining claim (its first issue on appeal). In relevant part, UOC argues that, as a party defendant, it should be able to assert counterclaims against Dr. Schutt. The litigants have focused their discussion around the trial court's conclusion that involuntary plaintiffs are not subject to affirmative counterclaims by party defendants. Before addressing this question, however, we must assess whether Dr. Schutt's joinder was proper in the first instance.

There is confusion regarding the precise effect of the trial court's August 1, 2012 order dismissing ARHS' initial complaint. Specifically, the trial court's disposition was based upon *Sprague v. Casey*, 550 A.2d 184, 189 (Pa. 1988), and the rules governing indispensable parties pursuant to subsection 2227(a). *See* Order, 8/1/2012, at 3-4 (holding that Dr. Schutt's rights are so "connected" that no decree can be made without impairing those rights and that "*Sprague* clearly states that a party must be joined if [he, she, or its] rights will be affected"; quoting Rule 2227(a)). Yet, in its subsequent opinion, the trial court stated that its order authorized ARHS to

- 13 -

join Dr. Schutt as an involuntary plaintiff pursuant to subsection 2227(b).

*See* T.C.O. at 11.[6]

In relevant part, Pa.R.C.P. 2227 reads as follows:

**Rule 2227.  Compulsory Joinder**

(a)    Persons having only a joint interest in the subject matter of an action must be joined on the same side as plaintiffs or defendants.

(b)    If a person who must be joined as a plaintiff refuses to join, he or she shall, in a proper case, be made a defendant or an involuntary plaintiff when the substantive law permits such involuntary joinder.

Pa.R.C.P. 2227.  In general, Rule 2227 "permits compulsory joinder in very limited situations."  *Kelly v. Carborundum Co.*, 453 A.2d 624, 628 (Pa. Super. 1982).  The text of the rule itself draws a distinction between compulsory joinder pursuant to subsection 2227(a) and involuntary joinder

---

[6]    Dr. Schutt's brief before this Court indicates that, initially, he declined to participate in this action.  *See* Brief for Dr. Schutt at 4 ("Dr. Schutt did not join with ARHS in the litigation filed by ARHS.  Dr. Schutt did not want to be a party to the litigation.").  In light of the fact that the trial court's August 1, 2012 order did not explicitly direct ARHS to join Dr. Schutt as an involuntary plaintiff in the instant lawsuit, it appears that ARHS joined Dr. Schutt as an involuntary plaintiff upon its own authority.  While this procedure appears irregular, our Supreme Court has specifically held that involuntary joinder may be accomplished even in the absence of a specific order from a civil trial court.  *See Onorato v. Wissahickon Park, Inc.*, 244 A.2d 22, 24 (Pa. 1968) (in the absence of specific proceedings instituted to effect involuntary joinder under the Pennsylvania Rules of Civil Procedure, "it appears that nothing need be done save include the involuntary plaintiffs on the caption of the complaint.").  Thus, the mere fact that ARHS did not seek the trial court's leave for Dr. Schutt's involuntary joinder does not invalidate that joinder.

pursuant to subsection 2227(b). "[Rule] 2227(a) requires dismissal of an action, brought against only one party where there exists no timely attempt to join another necessary party as a defendant [or plaintiff]." ***Moorehead v. Lopatin***, 445 A.2d 1308, 1310 (Pa. Super. 1982). By contrast, "[Rule] 2227(b)] is applicable only where the substantive law provides that an interest is joint and the holder of such interest refuses to join. Involuntary joinder is necessary because without such joinder an indispensable party is missing and the action cannot proceed." ***Kelly***, 453 A.2d at 628.

***Onorato v. Wissahickon Park, Inc.***, 244 A.2d 22 (Pa. 1968), is one of the few precedents in Pennsylvania discussing the law concerning involuntary plaintiffs.[7] In that case, our Supreme Court held that, for involuntary joinder under subsection 2227(b), the substantive law applicable to a given case must explicitly permit such joinder. 244 A.2d at 25. This Court explained the limited scope of subsection 2227(b) as follows: "Thus, the joinder issue reduces itself to whether, in the language of Rule 2227(b),

_____

[7] Although more than forty-six years have passed since our Supreme Court issued its decision in ***Onorato***, that case continues to represent the Supreme Court's most thorough discussion of the scope of involuntary joinder. The High Court has issued two decisions since ***Onorato*** that address involuntary joinder, albeit briefly. In ***Heckendorn v. Consolidated Rail Corp.***, 456 A.2d 609 (Pa. 1983), and a decade later in ***CRY, Inc. v. Mill Service, Inc.***, 640 A.2d 372 (Pa. 1994), our Supreme Court declined to expand the substantive law permitting involuntary joinder. We read ***Heckendorn*** and ***CRY, Inc.*** for the proposition that our Supreme Court has not significantly altered involuntary joinder law since ***Onorato***.

the 'substantive law permits such involuntary joinder' in the case before us."

***Karoly v. Cap***, 530 A.2d 436, 441 (Pa. Super. 1987) (quoting ***Onorato***, 244 A.2d at 24-25).

In ***Onorato***, our Supreme Court held that the law permitting involuntary joinder is surpassingly narrow:

> The Note of the Procedural Rules Committee to Rule 2227(b) states that under present rules of substantive law,[8] proper cases for joining a party as an involuntary plaintiff exist in only the four instances where:
>
> (1)   The action is in *rem*.
>
> (2)   The unwilling person can be regarded as estopped by his conduct from objecting to the prosecution of the suit without his consent.
>
> (3)   The willing plaintiff and the unwilling person are joint tenants or tenants by the entireties and the action is brought to preserve or recover the jointly owned property or damages for injury to such property.
>
> (4)   The action is equitable in nature and no recovery of money damages is sought.

244 A.2d at 25. The fourth circumstance enumerated by our Supreme Court in ***Onorato*** is applicable to the instant case. Specifically, ARHS' cause of action in this case sounds purely in equity, and ARHS does not seek monetary damages. ***See*** ARHS' First Amended Complaint for Injunction and

---

[8]    Rule 2227(b) has been amended only twice since its inception in 1940. The first amendment, on April 18, 1975, does not appear to have substantively altered the text of Rule 2227(b). The second amendment, on April 12, 1999, had no effect except to render the text gender-neutral. ***See*** Pa.R.C.P. 2227 Historical Notes.

Declarative Relief, 8/7/2012, ¶¶27-35 (asserting causes of action for "injunctive relief" and "declaratory relief" without any claim for monetary damages); ***Soja v. Factoryville Sportsmen's Club***, 522 A.2d 1129, 1131 (Pa. Super. 1987) ("If the plaintiff is requesting permanent injunctive relief, the case is governed by the rules controlling actions in equity."). Thus, even in the absence of a specific proceeding instituted for the purpose of involuntary joinder, ARHS' actions were proper under our existing decisional law. ***Onorato***; ***Karoly***, *supra*.[9]

Having determined that Dr. Schutt's joinder was procedurally proper, we turn to the merits of UOC's claim. In relevant part, UOC argues as follows:

> Rule 2227 does not provide an involuntary plaintiff with any special status in the litigation, or otherwise provide that an involuntary plaintiff is exempt from the other pleading provisions

---

[9] Our discussion concerning Dr. Schutt's status in this case is necessitated by the complicated nature of Pennsylvania precedent regarding Pa.R.C.P. 2227(b). Specifically, although the text of subsection 2227(b) indicates that involuntary joinder is only permitted when "a person who must be joined as a plaintiff refuses to join," the Supreme Court's holding in ***Onorato*** states that no specific civil proceeding is required involuntarily to join such a party to a lawsuit. ***See*** 244 A.2d at 24. Taken to its logical conclusion in the context of ***Onorato***, Rule 2227(b) appears to permit involuntary joinder without the direct involvement of the trial court. Once a party is held to be "indispensable," its involuntary joinder is permitted so long as the party qualifies under one of the categories enumerated by ***Onorato***. To be clear, current law does not prohibit ARHS' actions with respect to involuntary joinder. Additionally, nothing currently requires an involuntary plaintiff to demonstrate putative refusal to participate. In the absence of guidance to the contrary from our Supreme Court, we must countenance the instant joinder. ***Onorato***, *supra*.

contained in the Pennsylvania Rules of Civil Procedure. The trial court . . . sustained Dr. Schutt's demurrers to the UOC counterclaims based upon Dr. Schutt's contention that counterclaims could not be asserted against an involuntary plaintiff. Research has failed to locate any appellate authority for that proposition.[5]

> [5] The decision in **Karoly**[,] referenced at page 10 of the trial court's May 30, 2013 Opinion and Order[,] did not involve the assertion of counterclaims against an indispensable party, and is not applicable here.

UOC's Brief at 20 (citations modified or omitted). We agree.

In **Karoly**, a plaintiff filed a complaint in assumpsit, seeking "to recoup monies . . . for legal services rendered on behalf of the defendant." 530 A.2d at 437. In an answer and new matter, the defendant asserted counterclaims for monetary damages both against the plaintiff and against several non-parties that had neither been held indispensable nor been joined to the litigation. The plaintiff filed preliminary objections claiming that the defendant had improperly joined the additional parties. Specifically, the defendant in **Karoly** unilaterally "altered the caption" of its answer to include the names of these new parties as involuntary party-plaintiffs. **Id.** at 439. Ultimately, a panel of this Court held that involuntary joinder in that case was improper.

**Karoly** does not stand for the proposition that involuntary plaintiffs are never subject to counterclaims. Rather, **Karoly** was decided upon the basis that the defendant's attempt involuntarily to join the additional plaintiffs was improper because the respective rights of the plaintiff and the involuntary plaintiffs were not sufficiently interrelated. The **Karoly** panel

- 18 -

held that the sole fact that a defendant has cognizable claims against non-parties to a litigation does not permit that defendant, without more, involuntarily to join those non-parties as plaintiffs pursuant to Rule 2227(b). There was no determination made in **Karoly** that involuntary joinder acts as a shield to immunize a party from otherwise proper counterclaims.

Turning to the instant case, it is clear that **Karoly** is inapplicable. Dr. Schutt was determined to be an indispensable party pursuant to Rule 2227(a) because his rights were "so connected with the claims of the litigants that no decree can be made without impairing those rights." Order, 8/1/2012, at 3-4 (quoting **Sprague**, 550 A.2d at 189). In **Karoly**, there was no determination that the putative involuntary plaintiffs were "indispensable parties," such that their joinder was required to sustain the original plaintiff's cause of action. In the case at bar, UOC did not seek Dr. Schutt's joinder solely in an effort to assert claims of liability against Dr. Schutt. Rather, UOC challenged ARHS' initial complaint upon the basis that Dr. Schutt was an indispensable party to the litigation. After the trial court agreed that Dr. Schutt was indispensable and ordered his joinder, ARHS properly joined Dr. Schutt as an involuntary plaintiff. Once Dr. Schutt had been properly joined as an involuntary plaintiff, he was subject to counterclaims[10] in the same fashion as any other party plaintiff.[11]

---

[10]     Pa.R.C.P. 1031 governs counterclaims under Pennsylvania law:

*(Footnote Continued Next Page)*

In light of the foregoing discussion, that portion of the trial court's order which dismissed UOC's counterclaims against Dr. Schutt was incorrect. Specifically, the trial court erred in concluding that UOC's counterclaims against Dr. Schutt were barred under Pa.R.C.P. 2227(b). **See** T.C.O. at 10-11. Accordingly, we must reverse that portion of the trial court's order that dismissed UOC's counterclaims against Dr. Schutt. Furthermore, because we conclude that Dr. Schutt was properly joined as an involuntary plaintiff, we also vacate that portion of the trial court's order directing the refiling of this action upon the basis of allegedly improper joinder. **See** T.C.O. at 14.

Order vacated in part, and reversed in part. Case remanded for further proceedings. Jurisdiction relinquished.

*(Footnote Continued)* ─────────────

**Rule 1031. Counterclaim.**

(a)  The defendant may set forth in the answer under the heading "Counterclaim" any cause of action cognizable in a civil action which the defendant has against the plaintiff at the time of filing the answer.

(b)  A counterclaim need not diminish or defeat the relief demanded by the plaintiff. It may demand relief exceeding in amount or different in kind from that demanded by the plaintiff.

[11]  The trial court's interpretation of **Karoly** also runs afoul of Pa.R.C.P. 2231(d), which reads, in relevant part, as follows: "Except as otherwise provided by these rules, the joinder of parties in any action shall not affect the procedural rights which each party would have if suing or sued separately." Instantly, there is nothing in the record indicating that UOC's counterclaims against Dr. Schutt would be otherwise invalid on their face except through the trial court's thoughtful but incorrect interpretation of the implications of Dr. Schutt's involuntary status.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>9/4/2014</u>