J-A16042-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| L.D. OIL & GAS ENTERPRISES, INC., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| DOROTHY C. LOOP AND ESTATE OF | : | |
| MARY A. CAWLEY, DECEASED, | : | |
| | : | |
| Appellees | : | No. 1883 WDA 2016 |

Appeal from the Order November 18, 2016
in the Court of Common Pleas of Venango County
Civil Division at No(s): 2014-1168

BEFORE: STABILE, J., FORD ELLIOTT, P.J.E., and STRASSBURGER,* J.

MEMORANDUM BY STRASSBURGER, J.: **FILED SEPTEMBER 12, 2017**

L.D. Oil & Gas Enterprises, Inc. (L.D. Oil) appeals from the November 18, 2016 order granting a motion for judgment on the pleadings filed by Dorothy C. Loop and the estate of Mary A. Cawley (Lessor). We reverse and remand for proceedings consistent with this memorandum.

On May 12, 2006, L.D. Oil entered into a lease (the Lease) with Lessor for the right to produce oil and gas from a 157-acre parcel of land located in Venango County (the Leasehold) owned by Lessor. The Lease provided the following, in relevant part.

> **LEASE TERM**. This lease shall remain in force for a primary term of five years from the date hereof and for as long thereafter as prescribed payments are made, or as long thereafter as operations are conducted on the Land in search of or production of oil or gas, or for as long as a well capable of production is located on the Land. If after the primary term the

*Retired Senior Judge assigned to the Superior Court.

last producing well on the Leasehold is plugged and abandoned, the Land will remain under lease for an additional period of one year from the date of plugging and abandonment.

\*\*\*

**LIMITATION OF FORFEITURE**. Any provision of this Lease to the contrary notwithstanding, this Lease shall not terminate and shall not be subject to a civil action or other proceeding to enforce a claim of forfeiture or termination unless Lessor has given Lessee written notice of Lessee's breach or of the cause of termination and Lessee does not cure such a breach or remove such cause of termination within 180 days from the receipt of the notice.

Complaint, 10/10/2014, at Exhibit.

On February 3, 2012, the parties "amended the Lease by granting to L.D. Oil the right to pool and utilize the Leasehold." Complaint, 10/10/2014, at ¶ 6. "The Lease provides for L.D. Oil to pay [Lessor] a royalty equal to one-eighth part of all oil and gas produced and marketed from the Leasehold." *Id*. at ¶ 7.

According to L.D. Oil, Ergon Oil Purchasing, Inc., has purchased oil produced by L.D. Oil on the Leasehold, but is "withholding payment for the oil until L.D. Oil [and Lessor] provide to Ergon a division order apportioning interests in the oil." *Id*. at ¶ 8. Lessor and L.D. Oil were not able to agree on such a division order; thus, on October 10, 2014, L.D. Oil filed a complaint for, *inter alia*, declaratory judgment against Lessor. Specifically, L.D. Oil was seeking an order declaring it "holds a seven-eighths working interest" in the Leasehold. Complaint, 10/10/2014, at 2.

Lessor filed an answer and new matter averring that the Lease expired on May 11, 2011, the end of the five-year primary term provided for in the Lease. Specifically, Lessor claimed that at that time, there was "no production of oil and gas on the premises," nor were there "operations conducted on the land in search of or production of oil or gas, and there were no activities which would allow a carryover of the lease after expiration of the primary term." Answer and New Matter, 11/14/2014, at ¶ 11. Additionally, Lessor averred that the 2012 amendment "did not extend the primary term." *Id*. at ¶ 12.

L.D. Oil filed a reply to new matter admitting that it had not produced oil or gas on the premises prior to May 12, 2011. Reply and New Matter, 11/20/2014, at ¶ 11. However, L.D. Oil averred that it did conduct operations on the land in search of oil and gas:

> a. L.D. Oil graded and graveled an existing access road across the land…
>
> b. …L.D. Oil spent months searching the ground of the partially wooded 167-acre property for well bores; and
>
> c. L.D. Oil pulled and attempted to put into production three wells which, unfortunately, produced only water.

*Id*. at ¶ 19.

Additionally, L.D. Oil asserted that Lessor did not provide notice of breach prior to May 11, 2011, pursuant to the Limitation of Forfeiture clause. In fact, L.D. Oil points out that Lessor executed the 2012 amendment "nine

months after the expiration of the initial five-year period." *Id*. at ¶ 25. On May 23, 2012, Lessor's counsel "wrote a letter to L.D. Oil taking the position that L.D. Oil did 'not have a lease that was still operative.'" *Id*. at ¶ 28. According to L.D. Oil, within the next 180 days, it conducted operations that would "cure any possible breach." *Id*. at ¶ 30. Significantly, L.D. Oil has in production a well on the Leasehold that is producing oil and gas that was purchased by Ergon in December 2013. *Id*. at ¶ 32.

After pleadings closed, L.D. Oil filed a motion for partial judgment on the pleadings, and Lessor filed a motion for judgment on the pleadings. Both parties offered interpretations of the lease provisions. Lessor argued that the lease expired on May 11, 2011 pursuant to the Lease Term provision of the Lease. L.D. Oil argued that pursuant to the Limitation of Forfeiture provision, the Lease could terminate only upon written notice by Lessor.

The trial court heard argument on the motions, and on April 21, 2016, it entered an opinion and order denying L.D. Oil's motion and granting Lessor's motion. Specifically, the trial court concluded that the "Lease expired at the end of the primary term, and by virtue of failing to be in production at that time, [L.D. Oil's] interests in the land expired along with it." Trial Court Opinion, 4/22/2016, at 13.

L.D. Oil timely filed a motion for reconsideration, which was also granted that day. On November 18, 2016, the trial court again entered judgment on the pleadings in favor of Lessor. On December 12, 2016, L.D. Oil filed a notice of appeal, and both L.D. Oil and the trial court complied with Pa.R.A.P. 1925.

On appeal, L.D. Oil sets forth one issue for our review:

Did the trial court err in ruling that the oil and gas lease between [L.D. Oil and Lessor] terminated automatically upon expiration of its primary term, notwithstanding [Lessor's] not having given notice of termination pursuant to the anti-forfeiture clause of the [L]ease or, if notice of termination was given, notwithstanding [L.D. Oil's] having resumed operations and commenced production of oil within the cure period afforded by the anti-forfeiture clause?

L.D. Oil's Brief at 4.

We address this claim mindful of the following.

Our scope of review on an appeal from the grant of judgment on the pleadings is plenary. Entry of judgment on the pleadings is permitted under Pennsylvania Rule of Civil Procedure 1034, which provides that after the pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for judgment on the pleadings.

A motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law. In determining if there is a dispute as to facts, the court must confine its consideration to the pleadings and relevant documents. On appeal, we accept as true all well-pleaded allegations in the complaint.

On appeal, our task is to determine whether the trial court's ruling was based on a clear error of law or whether there

- 5 -

were facts disclosed by the pleadings which should properly be tried before a jury or by a judge sitting without a jury.

Neither party can be deemed to have admitted either conclusions of law or unjustified inferences. Moreover, in conducting its inquiry, the court should confine itself to the pleadings themselves and any documents or exhibits properly attached to them. It may not consider inadmissible evidence in determining a motion for judgment on the pleadings. Only when the moving party's case is clear and free from doubt such that a trial would prove fruitless will an appellate court affirm a motion for judgment on the pleadings.

*Altoona Reg'l Health Sys. v. Schutt*, 100 A.3d 260, 265 (Pa. Super. 2014) (citations and quotation marks omitted).

As the issue on appeal involves contract interpretation, we set forth the following principles. "The interpretation of a contract is a matter of law and, as such, we need not defer to the trial court's reading of" it. *Integrated Project Servs. v. HMS Interiors, Inc.*, 931 A.2d 724, 732 (Pa. Super. 2007) (internal quotation marks omitted). "Where the words of the contract are clear and unambiguous, the intent of the parties must be determined exclusively from the agreement itself." *Metzger v. Clifford Realty Corp.*, 476 A.2d 1, 5 (Pa. Super. 1984). "Where the language of the written contract is ambiguous, extrinsic or parol evidence may be considered to determine the intent of the parties." *Id*. "While courts are responsible for deciding whether, as a matter of law, written contract terms are either clear or ambiguous; it is for the fact finder to resolve ambiguities and find the parties' intent." *Id*.

Instantly, the trial court concluded that the Lease was ambiguous as a matter of law. *See* Trial Court Opinion, 4/22/2016, at 7 ("In this case, the [trial c]ourt finds the Limitation of Forfeiture clause does present an ambiguity open to interpretation."). The trial court then went on to resolve the apparent ambiguity. Specifically, the trial court concluded that "the primary term provides a finite window during which [L.D. Oil] has the exclusive right to explore and develop a leasehold." *Id*. at 8. According to the trial court, L.D. Oil's interpretation of the Limitation of Forfeiture clause, which requires notice of termination by Lessor, "would be contrary to public policy." *Id*. at 9. "Allowing a contract which imposes no duty to develop and ties up the natural resources indefinitely is clearly against the public interest." *Id*. at 12. The trial court then offered its interpretation of the contract.

> In this instance, the only way [the trial c]ourt sees that the primary term can be given meaning, while still allowing [L.D. Oil's] interpretation of the Limitation of Forfeiture clause to control, would be to frame the "breach" as the failure to produce during the primary term. Otherwise, the primary term would be almost entirely eviscerated. Since the breach would be the failure to produce during the primary term, this would effectively cause the Limitation of Forfeiture clause to be a six-month notice to vacate the premises, since it would be impossible to cure the breach…. The Lease expired at the end of the primary term, and by virtue of failing to be in production at that time, [L.D. Oil's] interests in the land expired along with it.

*Id*. at 12-13.

On appeal, L.D. Oil first argues that the trial court erred in finding the language of the Limitation of Forfeiture clause of the lease ambiguous. L.D. Oil's Brief at 11.  Additionally, L.D. Oil contends that even if the provision is ambiguous, it was improper to grant a motion for judgment of the pleadings based upon such ambiguity, as any interpretation requires factual findings which are impermissible for such a motion.

We first must determine if the trial court erred in concluding that the terms of the contract are ambiguous.  "A contract is ambiguous if it is reasonably susceptible to different constructions." ***Trombetta v. Raymond James Fin. Servs., Inc.***, 907 A.2d 550, 562 (Pa. Super. 2006).  "A contract is not ambiguous if the court can determine its meaning without any guide other than knowledge of the simple facts on which, from the nature of the language in general, its meaning depends." ***Id***.  "A contract is not rendered ambiguous by the mere fact the parties do not agree on the proper construction." ***Id***.

Instantly, we agree with the trial court that there is an ambiguity in the Lease.  While the primary term of the Lease is for five years, the limitation of forfeiture clause appears to extend that term for an additional 180 days.  Because of this ambiguity, the parties would be permitted to present parol evidence; accordingly, it was improper for the trial court to enter judgment on the pleadings. ***See Windows v. Erie Ins. Exch.***, 161

A.3d 953, 958 (Pa. Super. 2017) (holding that the trial court did not err in denying motion for summary judgment where the terms of a contract were ambiguous). Thus, we reverse the order of the trial court.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/12/2017